1   Michael L. Mallow, SBN 188745
    mmallow@sidley.com
2   Rachel A. Straus, SBN 268836
    rstraus@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
4   Los Angeles, California 90013
    Telephone: (213) 896-6000
5   Facsimile: (213) 896-6600

6   Eric S. Mattson (admitted *pro hac vice*)
    emattson@sidley.com
7   SIDLEY AUSTIN LLP
    One South Dearborn
8   Chicago, IL 60603
    Telephone: (312) 853-7000
9   Facsimile: (312) 853-7036

10  *Attorneys for Defendant*
    *American Honda Motor Co., Inc.*
11
    Justin M. Penn (SBN 302350)
12  HINSHAW & CULBERTSON LLP
    222 N. LaSalle Street, Suite 300
13  Chicago, IL 60601
    Telephone: (312) 704-3000
14  Facsimile: (312) 704-3001

15  Attorneys for Defendant
    J.D. Power and Associates
16

17                  UNITED STATES DISTRICT COURT

18                  CENTRAL DISTRICT OF CALIFORNIA
19

20
    SAMUEL KATZ, individually and on       Case No. 15CV04410-CBM-RAO
21  behalf of a class of similarly situated
    individuals,
22                                          **DEFENDANTS' OPPOSITION TO**
                    Plaintiff,              **PLAINTIFF'S MOTION FOR**
23                                          **CLASS CERTIFICATION**
    vs.
24                                          Date: March 14, 2017
    AMERICAN HONDA MOTOR CO.,               Time: 10:00 am
25  INC., a California corporation, and J.D. Location: Courtroom 2
    POWER AND ASSOCIATES, a                 Judge: Consuelo B. Marshall
26  Delaware corporation,

27                  Defendants.

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................1

RELEVANT FACTS ............................................................2

I.      American Honda's customer satisfaction survey program ............................2

II.     Implementation of the customer satisfaction program....................................3

III.    The customer satisfaction calls to Plaintiff ................................4

LEGAL STANDARD............................................................5

ARGUMENT ......................................................................6

I.      The issue of consent precludes class certification..........................................6

     A.     Whether putative class members provided consent is an individual
       issue ...........................................................6

     B.     To the extent Plaintiff argues providing consent to an Acura dealer
       is not providing consent to American Honda, individual issues
       abound ...........................................................8

II.     The claims of some putative class members would be subject to
     mandatory arbitration ......................................................9

III.    Plaintiff is not typical of the class he seeks to represent because he did
     not actually receive any calls......................................................9

CONCLUSION ..................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchen Prods. v. Windsor,*
    521 U.S. 591 (1997).......................................................................................... 5

*Connelly v. Hilton Grand Vacations Co., LLC,*
    294 F.R.D. 574 (S.D. Cal. 2013) ................................................................... 8

*Conrad v. General Motors Acceptance Corp.,*
    283 F.R.D. 326 (N.D. Tex. 2012)................................................................... 8

*Forman v. Data Transfer, Inc.,*
    164 F.R.D. 400 (E.D. Pa. 1995) .................................................................... 6

*Gragg v. Orange Cab Co.,*
    995 F. Supp. 2d 1189 (W.D. Wash. 2014) .................................................... 1

*In the Matter of GroupMe, Inc./Skype Comm S.AR.L,*
    CG Docket No. 02-278, 29 FCC Rcd. 3442 (2014) ...................................... 8

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 10

*Hicks v. Client Servs., Inc.,*
    No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla. Dec. 10, 2008)................ 8

*Jamison v. First Credit Servs., Inc.,*
    290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................... 8

*Olney v. Job.com, Inc.,*
    No. 12-cv-01724, 2014 WL 1747674 (E.D. Cal. May 1, 2014) .................... 8

*SEC v. McCarthy,*
    322 F.3d 650 (9th Cir. 2003) ....................................................................... 10

*Sherman v. YAHOO! Inc.,*
    No. 13-cv-0041, 2015 WL 5604400 (S.D. Cal. Sept. 23, 2015)................... 8

*In re TFT-LCD (Flat Panel) Antitrust Lit.,*
    07-MDL-1827, 2011 WL 1753784 (N.D. Cal. May 9, 2011)........................ 9

ii

*Van Patten v. Vertical Fitness, LLC*,
　　No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017) .............................. 6, 11

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
　　271 F.R.D. 668 (D. Wyo. 2011) ............................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011)...................................................................................... 5, 7

*Zinser v. Accufix Research Inst, Inc.*,
　　253 F.3d 1180 (9th Cir. 2001) ............................................................................. 5

**Statutes**

47 U.S.C. § 227 ...................................................................................... *passim*

47 U.S.C. § 227(b)(1)(A) ........................................................................... 10

47 U.S.C. § 227(b)(1)(B) ........................................................................... 10

**Other Authorities**

47 C.F.R. § 64.1200(f)(12) ....................................................................... 2, 6

30 F.C.C. Rcd. At 7991-92 ........................................................................... 6

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**CASE NO. 15-CV-04410**

ACTIVE 219921267

**INTRODUCTION**

American Honda Motor Co., Inc.'s efforts to ensure high quality service at Acura dealers resulted in Plaintiff Samuel Katz suing American Honda under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff now seeks certification of a nationwide class of what he claims are 1.5 million customers who may have received customer satisfaction calls on their cell phones following maintenance or repair at an Acura dealer.

There are two primary issues in this case: (1) whether the calls were made using an automated dialing system, or "auto-dialer" and (2) whether putative class members consented to receiving the calls.

Plaintiff claims this case should be certified because the same system, script, and procedures were used to place the calls. Although this argument may allow Plaintiff to establish commonality as to one issue, it ignores the dispositive fact that ***none*** of the calls were made using an auto-dialer, which means none of the calls violated the TCPA. *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash. 2014) (citing the Matter of Rules & Regulations Implementing the TCPA of 1991, 23 F.C.C.R. 559, 566 ¶ 14 (Jan. 4, 2008)). As long as Plaintiff concedes, as he appears to do in his moving brief, that: (1) the challenged calls were dialed using the same system and (2) those calls were initiated by an interviewer manually typing all 10 digits, American Honda does not dispute the auto-dialer issue can be answered using common proof.

Although the auto-dialer issue may be answered using common proof, certification remains inappropriate because the other dispositive issue – whether Plaintiff and putative class members consented to the calls – is not nearly as straightforward. Ignoring the FCC's clear guidance on this point, Plaintiff asserts the calls are "telemarketing," which would require "written" consent to be lawful under the TCPA. But as discussed in detail in American Honda's accompanying motion for summary judgment, this argument is meritless:

1. The calls are not telemarketing because the purpose of the calls was to inquire about customer satisfaction, not for "encouraging the purchase or rental of, or investment in, property, goods, or services.…" 47 C.F.R. § 64.1200(f)(12).

2. Plaintiff and putative class members consented to the calls by providing their cell phone numbers to Acura dealers in connection with the service of their vehicles.

Even if the calls were telemarketing, a material number of putative class members signed lease agreements expressly providing "consent to receive… autodialed calls relating to [their] Vehicle(s)." Ex. A to Declaration of Blair Williams in Support of Defendants' Opposition to Plaintiff's Motion for Class Certification ("Williams Decl."). In light of this fact, determining which customers consented to auto-dialed calls from American Honda (and thus could not be part of any class) is an individual issue requiring a customer-by-customer review of the agreements they signed. This undermines any notion that a class action is a "superior" method of addressing Plaintiff's claims, as Rule 23 requires.

Consent is just one individualized issue; there are others. They include whether individual class members must arbitrate their TCPA claims. This issue too would require a customer-by-customer review of various agreements. Additionally, Plaintiff is not typical of the class he seeks to represent because he never answered any of the challenged calls – a fact that makes him vulnerable to a unique defense.

In short, while the determination of whether an auto-dialer was used to call putative class members may be amenable to common proof, the issues of consent, arbitration, and whether Plaintiff is typical of the class he seeks to represent preclude class certification.

## RELEVANT FACTS

### I.   American Honda's customer satisfaction survey program

Acura is American Honda's luxury vehicle brand. Both American Honda and

2

Acura dealers recognize that consumers of luxury products expect excellent customer service. Declaration of Michael Mallow in Support of Defendants' Joint Motion for Summary Judgment[1] ("Mallow Decl."), Ex. A at 4; Ex. B. To meet those expectations, American Honda gives Acura customers the opportunity to provide feedback through the "Acura Client Excellence" survey program. Mallow Decl., Ex. A at 7; Ex. C at 84:22-85:18. The survey includes two components: (1) a two-minute, two-question phone survey of customers who provided their phone numbers to Acura dealers, and (2) if the customer provides their email address, an email survey. Mallow Decl., Ex. A at 7, 14; Ex. D. The information from the surveys is provided to Acura dealers to help them monitor customer satisfaction, improve customer service, and gauge their service quality relative to other Acura dealers. Mallow Decl., Ex. A at 4, 7-8; Ex. B; Ex. C at 16:14-24.

## II.      Implementation of the customer satisfaction program

American Honda hired J.D. Power to implement the customer satisfaction survey. J.D. Power, in turn, hired third party Survey Sampling International to conduct the survey. Survey Sampling International utilizes a telephone interviewing platform to place the calls. Declaration of Troy Lauritzen in Support of Defendants' Motion for Summary Judgment ("Lauritzen Decl.") ¶ 3. As detailed in American Honda's pending motion for summary judgment, this platform has two separate and distinct outbound dialing systems: a human-initiated system used to call cell phone numbers (the "CellPhone Server"), and an automated dialing system used to call landlines (the "Predictive Dialer"). Lauritzen Decl. ¶ 3; Mallow Decl., Ex. H at 16:10-17, 110:23-111:9, 122:13-123:15; Ex. I at SSI_000087-89; Ex. J at SSI_000116 (CellPhone Server is "independent from any system with the capacity to store or queue numbers for predictive dialing"). The two dialing systems use separate

---

[1] For ease of reference, American Honda is citing the Mallow and Lauritzen declarations previously submitted in support of Defendants' Motion for Summary Judgment. Those declarations have been refiled with this brief.

ACTIVE 219921267

hardware, are on separate servers, and access separate cell phone or landline queues. Lauritzen Decl. ¶ 3; Mallow Decl., Ex. H at 118:7-19. In addition, the CellPhone Server uses its own unique software, the CellPhone Dialer. Lauritzen Decl. ¶ 3; Mallow Decl., Ex. I at SSI_000086, SSI_000093. The CellPhone Server was specifically designed to be incapable of automated or predictive dialing. Lauritzen Decl. ¶ 5-6; Mallow Decl., Ex. H at 34:11-14, 45:9-12, 68:6-21, 135:5-11; Ex. J at SSI_000116. This means interviewers must manually input all ten digits of a phone number and press a "dial" button to complete a call. Lauritzen Decl. ¶ 6; Mallow Decl., Ex. H at 45:9-12, 68:6-21; Ex. J at SSI_000116. If the interviewer fails to complete either of these steps, no call is placed. Lauritzen Decl. ¶ 6; Mallow Decl., Ex. H at 68:6-21.

The CellPhone Server also does not have the capacity to auto-dial, predictive dial, or randomly dial as it does not have features that can be activated or added that would permit these functions. Lauritzen Decl. ¶ 5; Mallow Decl., Ex. H at 135:16-136:10. The system would require a "complete redesign" to enable auto, predictive, sequential, or random dialing. Mallow Decl., Ex. H at 135:16-136:10.

In his class certification brief, Plaintiff conflates the two distinct dialing systems into one and argues Survey Sampling International's entire business platform is an auto-dialer. See Mov Br. at 17. In his view, because the landline dialing system has the capacity to work as an auto-dialer, the separate CellPhone Server does as well. *Id*. This fails to recognize the simple but dispositive fact that the CellPhone Server is a different, unrelated and separate system from the predictive dialer for landlines. Lauritzen Decl. ¶ 3; Mallow Decl., Ex. H at 16:10-17, 110:23-111:9, 122:13-123:15; Ex. I at SSI_000087-89; Ex. J at SSI_000116.

### III.   The customer satisfaction calls to Plaintiff

Plaintiff voluntarily provided his cell phone number to his Acura dealership when he brought his car in for service. First Amended Complaint, Dkt. 63 ("Compl.") ¶ 20; Mallow Decl., Ex. E at 75:10-16; Ex. F. In connection with this service,

4

American Honda attempted to contact Plaintiff six times to seek feedback on his experience. Lauritzen Decl. ¶ 8; Mallow Decl., Ex. G. These calls were manually dialed by a live person entering ten digits to initiate the call. Lauritzen Decl. ¶¶ 6-8; Mallow Decl., Ex. H at 34:11-14, 45:9-12, 68:6-21; Ex. J at SSI_000116. Plaintiff did not answer any of the calls, and no voicemail messages were left. Compl. ¶ 24; Mallow Decl., Ex. E at 86:6-8; Ex. H at 71:12-25. Plaintiff incurred no out-of-pocket costs related to the calls, and none of the calls appeared on his telephone bill. Mallow Decl., Ex. E at 42:7-9, 104:15-17.

## LEGAL STANDARD

To obtain class certification, Plaintiff bears the burden of demonstrating that all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met. *See Zinser v. Accufix Research Inst, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001). Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. *Id.* As explained below, Plaintiff's request founders on the "typicality" requirement of Rule 23(a)(3), as well as the "far more demanding" requirements of Rule 23(b)(3). *Amchen Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rather, a plaintiff "must affirmatively demonstrate his compliance with [Rule 23]" by proving that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350. Thus, when evaluating whether Plaintiff demonstrated his compliance with Rule 23, the Court must "engage in a 'rigorous analysis' often requiring some evaluation of the 'merits of the plaintiffs underlying claim,' before finding that the prerequisites for certification have been satisfied." *Id.*

ACTIVE 219921267

**ARGUMENT**

I.     **The issue of consent precludes class certification**

     A.     **Whether putative class members provided consent is an individual issue**

Plaintiff's reason for insisting the calls are telemarketing is apparent, albeit meritless. For non-telemarketing calls, such as the calls at issue here, consent can be demonstrated by the party providing his or her phone number to the person initiating the call. *See* 30 F.C.C. Rcd. At 7991-92. Thus, as the Ninth Circuit recently held, Plaintiff and putative class members consented to the calls by providing their cell phone numbers to Acura dealers in connection with the service of their vehicles. *See Van Patten v. Vertical Fitness, LLC*, No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017) (holding that when a customer provides a cell phone number in the context of a transaction, the customer consents to being contacted at that number about the transaction). On the other hand, companies must obtain customers' "prior express *written* consent" for "telemarketing" calls. 47 C.F.R. § 64.1200(f)(12) (emphasis added). The calls at issue here are not "telemarketing" for the reasons explained in American Honda's pending motion for summary judgment. Dkt. No.   84. (If the Court agrees with American Honda on that or the other independent bases for entering summary judgment, Plaintiff's request for class certification can and should be denied as moot.). But even if the categorization of the calls were open to reasonable debate, the issue of whether the putative class members consented would still be "inherently individualized" and would "require inquiry into the particular circumstances of each transmission," thereby defeating class certification. *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403-404 (E.D. Pa. 1995).

Plaintiff attempts to sidestep this clear individual issue by arguing "to date, Defendant has failed to produce even a single example of a putative class member who gave valid, prior express written consent." Mov Br. at 2 & 19. This is simply untrue. American Honda produced a template agreement that was signed by a

6

material number of putative class members that expressly allow auto-dialed calls. Williams Decl. Ex. A, ¶¶ 4, 5 *see also* Ex. B.

> Specifically, the Acura Luxury Lease Agreement states:

> **COMMUNICATION WITH LESSOR**: You verify that the phone numbers on page 1 are yours. You consent to receive emails, prerecorded messages and/or autodialed calls (including text messages) relating to this Lease, the Vehicle, your account, lease-end options and promotions. These communications may be made by Lessor, Assignee, AHFC or their agents or assignees, even if your phone number is registered on any state or federal Do No Call list. You may incur a charge for calls by your telephone carrier. Lessor, Assignee, or AHFC may obtain and contact email addresses and phone numbers provided by you directly or obtained through other lawful means…Your consent to this provision is not required to execute this Lease.

Williams Decl. Ex. A.

If a class was certified, American Honda would be entitled to explore a consent defense for each of the 225,138 putative class member who signed a Luxury Lease Agreement. *Dukes*, 564 U.S. at 338 (internal citations omitted) (explaining that "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify and substantive right,' a class cannot be certified on the premise that [a defendant] will not be entitled to litigate its statutory defenses to individual claims."). In fact, putative class members signed different versions of the Acura Luxury Lease Agreement with varying consent-to-call language. Williams Decl. ¶¶ 6-8. The only way to determine which language was included in the lease agreements signed by each putative class members would be to manually review the individual agreements, the vast majority of which are only in paper form and housed in Acura's regional offices, which are located throughout the United States. *Id.* ¶¶ 9-10.

Courts in the Ninth Circuit and elsewhere have recognized that individual issues of consent, by themselves, can preclude certification. As one court explained:

> Although TCPA cases are not per se unsuitable for class resolution, class certification is warranted only when the unique facts of a particular case indicate that the individual adjudication of the pivotal element of prior express consent is unnecessary. Thus, predominance in TCPA cases primarily turns on whether a class-based trial on the merits could actually be administered.

1  *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013)

2  (internal citations omitted).[2] In *Connelly*, the court found individualized inquiries

3  would have to be made of putative class members to evaluate the consent issue; this

4  individualized issue, the court held, was "at least as important as the common issues

5  and the predominance requirement is not satisfied." *Id.* at 578.

6
7  **B.  To the extent Plaintiff argues providing consent to an Acura dealer is not providing consent to American Honda, individual issues abound**

8  Presumably Plaintiff will argue in his opposition to American Honda's Motion

9  for Summary Judgment that even if Plaintiff and the putative class gave consent to an

10  Acura dealer, that consent would not pass to American Honda. Not only is this

11  position contrary to applicable law – a "person may indirectly provide a third party

12  with express consent to be called" under the TCPA[3] – it also creates numerous

13  individual issues. An inquiry of each customer would be necessary to determine: (1)

14  the customer's subjective intent when providing their number to the Acura dealer; (2)

15  the customer's understanding of the relationship between Acura and the dealers; and

16
17  [2] *See also Sherman v. YAHOO! Inc.*, No. 13-cv-0041, 2015 WL 5604400, at *10 (S.D. Cal. Sept. 23, 2015) (denying certification in part because "individualized inquiry would be required to determine the consent profile of each putative class member"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (denying class certification, in part, because "there is no way to employ generalized proof to prove consent"); *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2008 WL 5479111, at *7-8 (S.D. Fla. Dec. 11, 2008) (denying certification because the individualized nature of "prior express consent" would require "mini-trials on consent of every class members"); *Conrad v. General Motors Acceptance Corp.*, 283 F.R.D. 326, 330 (N.D. Tex. 2012) (denying certification because "the consent issue would necessitate individual inquiries regarding each putative class member's account and the circumstances surrounding each call or contact."); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (denying certification because resolution of each putative class member's TCPA claim would necessarily involve individual assessment of whether each class member consented to receive telephone calls on their cellular telephone.).

25  [3] *See Olney v. Job.com, Inc.*, No. 12-cv-01724, 2014 WL 1747674, at *7 (E.D. Cal. May 1, 2014); *see also in the Matter of GroupMe, Inc./Skype Comm S.AR.L*, CG Docket No. 02-278, 29 FCC Rcd. 3442, 3445 (2014) (concluding "that allowing consent to be obtained and conveyed via intermediaries…facilitates these normal, expected, and desired business communications in a manner that preserves the intended protections of the TCPA").

28

(3) whether the customer had received customer satisfaction calls in the past and expected to be contacted again after repair or maintenance of their vehicle. Additionally, as noted above, a material number of putative class members consented to be called via an auto-dialer when they signed vehicle leasing and financing agreements. *See* Williams Decl. Ex. A and B.

## II.   The claims of some putative class members would be subject to mandatory arbitration

Many Acura customers can not be part of the putative class because they agreed to arbitrate their claims. For example, the Acura Luxury Lease Agreement contains a arbitration provision that expressly states, "ANY CLAIM YOU MAY HAVE IN THE FUTURE MUST BE RESOLVED THROUGH BINDING ARBITRATION." Williams Decl. Ex. A. This includes all claims against American Honda. *Id*. Additionally, customers may have their vehicles serviced pursuant to a Vehicle Services Contract, and many of those contracts include arbitration provisions. Williams Decl. Ex. C. For those customers, any TCPA claim based on a quality service phone call after maintenance would be subject to the arbitration provision.

Determining which customers are subject to mandatory arbitration (and thus could not be part of any class) is an inherently individualized inquiry. *See In re TFT-LCD (Flat Panel) Antitrust Lit.*, 07-MDL-1827, 2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011) ("[T]he existence of [agreements with arbitration clauses] with some members of the putative class but not others is a quintessential individualized issue that bears on the propriety of class certification."). For this reason as well, class certification should be denied.

## III.   Plaintiff is not typical of the class he seeks to represent because he did not actually receive any calls

The typicality requirement of Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This rule precludes certification "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."

9

1   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

2       Plaintiff is not typical of the class he seeks to represent because he did not

3   answer a single Acura Client Excellence call and did not receive a single text

4   message or voicemail from American Honda; moreover, none of the calls even

5   appeared on Plaintiff's phone bill. As a result, any calls to Plaintiff were not "made,"

6   as required by the provision of the TCPA applicable to cell phones. Compl. ¶ 24;

7   Mallow Decl., Ex. E at 42:7-9, 86:6-8, 104:15-17; Ex. H at 71:12-25.

8       Plaintiff's inability to demonstrate that any call was made to his cell phone is

9   critical. Under the TCPA, it is generally unlawful for a person "to ***make*** any call" to a

10  cell phone using an auto-dialer. 47 U.S.C. § 227(b)(1)(A) (emphasis added). Liability

11  is premised on the call being "made"; in other words, connecting. This is different

12  than other sections of the TCPA, which provide that merely "initiat[ing]" a call can

13  trigger liability. *See*, *e.g.*, 47 U.S.C. § 227(b)(1)(B) (making it unlawful under most

14  circumstances "to initiate any telephone call to any residential telephone line using an

15  artificial or prerecorded voice to deliver a message without the prior express consent

16  of the called party [listing exceptions]"). "It is a well-established cannon of statutory

17  interpretation that the use of different words or terms within a statute demonstrates

18  that Congress intended to convey a different meaning for those words." *SEC v.*

19  *McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) citing *Russello v. United States*, 464

20  U.S. 16, 23 (1983). Here, although calls to Plaintiff's cell phone may have been

21  attempted or "initiated," they were never "made" as required by the TCPA. As a

22  result, Plaintiff has no claim against American Honda.

23      The Ninth Circuit's recent discussion of Article III standing in the *Van Patten*

24  opinion does not address the typicality issues raised here. While *Van Patten* was a

25  TCPA case, the text messages at issue were in fact received by the plaintiff, so there

26  was no issue about whether the call was received or "made." 2017 WL 46066 at *1.

27  *Van Patten* discussed whether a text message confers constitutional standing as a

28  violation of privacy, *id.* at * 3, but that is not the issue here. The question here is

1  whether Plaintiff is typical of the class he seeks to represent when he did not answer
2  any calls, no text message or voice message was left, and the subject calls are not
3  reflected on his phone bill. Plaintiff may assert that this is a merits issue, but it is a
4  merits issue that renders Plaintiff atypical of the putative class he seeks to represent.

**CONCLUSION**

For the reasons discussed above, Defendants respectfully requests that this
Court deny Plaintiff's motion for class certification.

Dated: February 15, 2017

SIDLEY AUSTIN LLP


By:  /s/ Michael L. Mallow

Michael L. Mallow
Attorneys for Defendant
American Honda Motor Co., Inc.

HINSHAW & CULBERTSON LLP


By:  /s/ Justin M. Penn

Justin M. Penn
Attorneys for Defendant
J.D. Power & Associates

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CASE NO. 15-CV-04410

219927980v.5

ACTIVE 219921267