UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL KATZ, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br>vs.<br><br>AMERICAN HONDA MOTOR CO., INC., *et al.*<br><br>Defendants. | Case No.: 15-cv-4410-CBM-RAOx<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

The matter before the Court is Plaintiff's Motion for Class Certification (the "Motion"). (Dkt. No. 78.)[1]

## I.  BACKGROUND

On June 10, 2015, Plaintiff filed a class action complaint asserting a single cause of action against Defendant American Honda Motor Co., Inc. ("Honda") for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227,

---

[1] The Motion was taken under submission at the conclusion of the hearing on the Motion on April 25, 2017. (Dkt. No. 133.) Plaintiff filed a supplemental declaration in support of the Motion on May 1, 2017 (Dkt. No. 135), and Defendants filed a response to the supplemental declaration on May 3, 2017 (Dkt. No. 137). Plaintiff also filed a "Notice of Supplemental Authority" on June 6, 2017, which included new arguments in support of the Motion. (Dkt. No. 142.) The Court has not considered new arguments contained therein in ruling on the Motion. (*See* L.R. 7-12.)

and its implementing regulations, 47 C.F.R. § 64.1200 *et seq.*, based on Honda's alleged placement of unsolicited automated telephone calls to Plaintiff's cellphone after he took his Acura vehicle to a dealership for service. Plaintiff's initial motion for class certification (Dkt. No. 35) was denied by the Court on January 29, 2016. (Dkt. No. 41.) The Court, however, permitted Plaintiff to file another class certification motion upon conducting additional discovery. (Dkt. No. 41.) Plaintiff filed a First Amended Complaint ("FAC") upon receiving leave to amend from the Court on August 19, 2016, which added J.D. Power & Associates ("J.D. Power") as a named defendant. (Dkt. No. 63.) Discovery deadlines have passed, the final pretrial conference is set for August 22, 2017, and trial is set to commence on September 12, 2017. (Dkt. No. 143.)

## II. STATEMENT OF THE LAW

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if:

    **(1)** the class is so numerous that joinder of all members is impracticable;

    **(2)** there are questions of law or fact common to the class;

    **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    **(4)** the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980-81 (9th Cir. 2011).

Rule 23(b)(3)[2] provides that a class may be certified if Rule 23(a) is satisfied and if the Court "finds that the questions of law or fact common to class

---

[2] Plaintiff's request the Court certify the class pursuant to Rule 23(b)(3) only.

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides that "matters pertinent to these findings include":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

## III. DISCUSSION

Plaintiff's Motion seeks to certify a class defined as:

> All individuals in the U.S. whose cellphone number(s) were called by or on behalf of Defendants, where such call(s) were made between October 16, 2013 and the present, were placed by Survey Sampling International, LLC, and were made pursuant to Defendants' Acura Client Excellence Program.[3]

**A. Rule 23(a)**

**(1) Numerosity**

Plaintiff submits evidence of call logs demonstrating Defendants made millions of calls to approximately 1.6 million different telephone numbers between June 2011 and July 2016.[4] Accordingly, the numerosity requirement is met here. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (citation omitted).

---

[3] The Court considered the proposed class definition set forth in the Motion, even though it is different from the class definition pled in the FAC, for purposes of ruling on the Motion. *See Wolf v. Hewlett Packard Co.*, 2016 WL 7743692, at *14 (C.D. Cal. Sept. 1, 2016); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015).

[4] Defendants do no dispute the numerosity requirement has been met.

**(2) Commonality**

Plaintiff identifies the following common questions of law or fact which are capable of class-wide resolution:

1. Did Defendants place calls to the class members' cellphone numbers?
2. Is the calling system Defendants' vendor used to place the calls for the ACE program an automatic telephone dialing system under the TCPA?
3. Did the telephone calls made pursuant the ACE program constitute "telemarketing" under the FCC's regulations for the TCPA?

Accordingly, the commonality requirement is satisfied here.[5] *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).

**(3) Typicality**

Rule 23(a) requires the Court to determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). To satisfy the typicality requirement, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). *See also Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, it is undisputed Plaintiff did not provide prior express written consent to receive calls from Defendant. Defendants, however, offer evidence of prior express written consent[6] by some putative class members. (*See infra*.) Accordingly, the typicality requirement is not satisfied. *See, e.g.*, *Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at *9 (S.D. Cal. Sept. 23, 2015) (typicality

---

[5] Defendants do not dispute the commonality requirement is satisfied here.
[6] Prior express written consent was required here. (*See infra* n. 7.)

4

requirement not met where the plaintiff "may have consented" to receiving messages through one method but other class members may not have consented through that method, and class members "may be found to have consented" through another method but the plaintiff "would not").

**(4) Adequacy**

To satisfy the adequacy of representation requirement, Plaintiff must show:

(1) the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously;

(2) Plaintiff has obtained adequate counsel; and

(3) there is no conflict between Plaintiff's individual's claim and those asserted on behalf of the class.

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Since Plaintiff did not provide express written consent to be called, but Defendants provide evidence of prior express written consent by some class members, Plaintiff's interests are not aligned with the class because "Plaintiff's incentive to settle the case would be based on considerations not representative of the entire class." *Sherman*, 2015 WL 5604400, at *9.

Accordingly, the Court finds the adequacy requirement is not satisfied.

**B. Rule 23(b)(3)—Predominance**

47 C.F.R. § 64.1200(a)(2) requires "prior express written consent of the called party" where a call to a cellphone number made using an automatic telephone dialing system "includes or introduces an advertisement or constitutes telemarketing."[7] "Prior express written consent" is defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or

---

[7] As set forth in the Court's Order re: Defendants' Joint Motion for Summary Judgment (Dkt. No. 138), the Court finds the calls to Plaintiff were advertising calls because they were made for customer service purposes as well as to increase future sales, and therefore prior express written consent was required. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917-18 (9th Cir. 2012).

5

telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). The written agreement for prior express written consent must "include a ***clear and conspicuous*** disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory ***telemarketing*** calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i) (emphasis added).[8]

Defendants submit a copy of a template Acura Luxury Lease Agreement drafted "released in February 2015," which states:

> **COMMUNICATION WITH LESSOR**: You verify that the phone numbers on page 1 are yours. ***You consent to receive emails, prerecorded messages and/or autodialed calls*** (including text messages) relating to this Lease, the Vehicle, your account, lease-end options and ***promotions***. These communications may be made by Lessor, Assignee, AHFC or their agents or assignees, even if your phone number is registered on any state or federal Do No Call list. You may incur a charge for calls by your telephone carrier. Lessor, Assignee, or AHFC may obtain and contact email addresses and phone numbers provided by you directly or obtained through other lawful means…***Your consent to this provision is not required to execute this Lease.***

(Williams Decl. ¶ 6, Ex. A (hereinafter, "2015 Lease Agreement") (emphasis added).)[9]

---

[8] Defendant also offers evidence of an October 2014 Honda Financial Services Application (Williams Decl. ¶10, Ex. B), in support of its contention individual consent issues predominate. The Court finds, however, the October 2014 Honda Financial Services Application does not satisfy the requirements for prior express written consent because it does not include a disclosure informing the signer that he/she "is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i).

[9] The Court finds the 2015 Lease Agreement is "clear and conspicuous" and "unambiguous" for purposes of the TCPA's regulations regarding prior express

Defendants offer evidence demonstrating: (1) approximately 225,138 customers leased Acura vehicles from Honda from October 2013 to the present; (2) there are different versions of lease agreements used by car dealers during the class period with different language regarding a customer's consent to receiving calls; (3) the "vast majority" of 2015 Lease Agreements signed by customers are in paper form and are housed in regional offices located throughout the United States; and (4) only a "small percentage" of the 2015 Lease Agreements have been scanned and are electronically available but even those agreements available electronically would need to be individually reviewed to determine which version of the agreement was signed by the customer. (Williams Decl. ¶¶ 4-8, 10.)

Defendants' evidence demonstrates the Court would be required to make individualized inquiries and determinations as to whether each class member signed a 2015 Lease Agreement, which version of the 2015 Lease Agreement was used, whether the language in the agreement included the requirements for prior express written consent, when the lease agreement was signed, and when calls were received, in order to determine whether each class members gave prior express written consent before receiving calls from Defendants.[10] Moreover, Plaintiff fails to demonstrate consent (or lack of consent) can be established through class-wide proof. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) (district court abused its discretion in certifying the class in a

---

written consent. *See* 27 F.C.C. Rcd. 1830, 1844 (F.C.C. Feb. 15, 2012) ("[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates."). The Court is bound by the Federal Communications Commission's orders interpreting the TCPA. *See Baird v. Sabre, Inc.*, 636 Fed. App'x 715, 716 (9th Cir. 2016).

[10] *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036 (9th Cir. 2012), is distinguishable because here, Defendants submit evidence of prior express written consent.

TCPA action where plaintiff failed to advance any "sensible method of establishing consent or the lack thereof via class-wide proof").

Accordingly, the Court finds, based on the facts in this case, that individualized inquiries and determinations as to consent predominate.[11] *See, e.g., Sherman*, 2015 WL 5604400, at *10-11; *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013); *Fields*, 2013 WL 6073426, at *4; *Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577 (S.D. Cal. 2013).[12]

### IV. CONCLUSION

Accordingly, the Court **DENIES** Plaintiff's Motion for Class Certification.[13]

**IT IS SO ORDERED.**

DATED: June 29, 2017.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[11] The mere fact consent is an affirmative defense does not preclude denial of class certification where individualized issues regarding consent predominate over common issues. *See, e.g., Fields v. Mobile Messengers Am., Inc.*, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013). While some courts "have been reluctant" to deny motions for class certification because affirmative defenses may be available against individual members, the Court finds the affirmative defense of prior consent in this case is "unusually important" based on evidence offered by Defendants regarding consent by putative class members. (*See* Newberg on Class Actions § 4:55 (5th ed.).)

[12] Since the Court finds individualized consent issues predominate, the Court does not address the superiority requirement or whether individualized issues regarding arbitration predominate over common issues.

[13] The Court declines to modify Plaintiff's proposed class definition to create a subclass/subclasses or to exclude consenting customers. *See, e.g., Legge v. Nextel Commc'ns, Inc.*, 2004 WL 5235587, at *17 (C.D. Cal. June 25, 2004).